**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH CIANCANELLI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-cv-9939 |
| | ) | |
| BELLWOOD SCHOOL DISTRICT 88, ET AL., | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' motion to dismiss or strike Plaintiff's complaint [8]. For the reasons set forth below, the Court denies Defendants' motion [8].

**I.  Background[1]**

Defendant School District 88 is an Illinois public school district located in Bellwood, Illinois that is governed by the District 88 School Board. At all relevant times, Defendants Marilyn Thurman, Daphne Walker, Drena Lanier, Dorothy Smith, Tommie Miller, Maria Castrejone, and Yvette Ramirez served on the District 88 School Board as elected members. In that capacity, the board members were responsible for selecting and hiring certain employees for District 88, including for the maintenance/custodian position. Defendant Gwen Frasier served, at all relevant times, as District 88's Director of Personnel and Human Resources. In that capacity, Frasier was responsible for advising the District 88 Board on selecting and hiring certain employees for District 88, including for the maintenance/custodian position.

---

[1] For purposes of Defendants' motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, *e.g., Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

In October 2010, Plaintiff applied for a maintenance/custodian position with District 88. On November 9, 2010, Plaintiff was interviewed for that position by District 88 Superintendent Kyle Hastings and two other District 88 representatives. On November 30, 2010, Plaintiff received a phone call from Caroline Watson, who worked for District 88. Watson asked Plaintiff to come to the District 88 Administration Center on December 1, 2010, to meet with her and process the paperwork for employment. As requested, Plaintiff met with Watson on December 1, 2010. Sheila Gale, an African-American female, also attended the meeting. Watson informed both Plaintiff and Gale that they were hired at $17.68 per hour. Watson told Plaintiff and Gale that once they completed their background checks, drug testing, and physicals and had received a TB shot, they would receive their start date.

On December 3, 2010, Plaintiff turned in the paperwork from his physical to Watson at the District 88 Administration Office. Three day later, Plaintiff called Watson and said that she had received his paperwork and the results of his TB test. She then told him to hold onto his remaining paperwork until his start date and bring it in at that time. Plaintiff called Watson again on December 13, 2010, and left her a message inquiring about his start date. Later that day, Plaintiff spoke to Watson, and she said that she was waiting for his start date from Gwen Frasier, District 88's Director of Personnel and Finances.

On December 14, 2010, Frasier called Plaintiff and told him that District 88 was rescinding his job offer. She also told him that District 88 was not hiring for any positions at that time. Plaintiff asked Frasier what he should do now, having been told by Watson that he had been hired, having gone through all the necessary background steps, having paid out-of-pocket for his physical, and having turned down another job offer. According to the complaint, Frasier said, "I don't know what to tell you, but maybe God is telling you this is not the place God wants

you to be." Frasier then told Plaintiff that his application would stay on file for a year and, if the District started to hire again, they would call him. Frasier also told Plaintiff that, if he turned in his expenses, he would be reimbursed. Finally, she told him that he would receive a letter stating that he was not given the position. Plaintiff never received reimbursement for his out-of-pocket expenses and he did not receive the letter.

The complaint alleges that the District hired several new employees in the following year, including for the maintenance/custodian position, without calling Plaintiff. The complaint further alleges that the "employee hired in place of Ciancanelli for the [maintenance] position was African-American and was hired because of his race."

On December 13, 2012, Plaintiff Joseph Ciancanelli filed his complaint against Defendants Bellwood School District 88, Marilyn Thurman, Daphne Walker, Drena Lanier, Dorothy Smith, Tommie Miller, Maria Castrejone, Yvette Ramirez, and Gwen Frasier. The complaint alleges race discrimination under 42 U.S.C. §1981 (Count I) and 42 U.S.C. §1983 (Count II). Plaintiff claims that Defendants have prevented him from engaging in an employment contract on equal terms to non-white candidates, resulting in lost wages, incurred expenses, and mental and physical suffering from stress, anger, humiliation, and frustration. Defendants have moved to dismiss or strike Plaintiff's entire complaint.

## II. Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," such that the defendant is given "'fair notice of what the * * *

3

claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). For a claim to be plausible, the plaintiff must put forth enough "facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Although "[s]pecific facts are not necessary [–] the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests," *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original) – "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Brooks*, 578 F.3d at 581 (quoting *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007)). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

4

The Court accepts as true all well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn from them. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005). Moreover, in reviewing a *pro se* complaint, the Court employs standards less stringent than if the complaint had been drafted by counsel. *Curtis v. Bembenek*, 48 F.3d 281, 283 (7th Cir. 1995).

### III. Analysis

Defendants make three primary arguments in support of dismissal: (1) that Plaintiff fails to state a claim under §§ 1981 and 1983; (2) that recovery of punitive damages from District 88 and the individual Defendants is prohibited; and (3) that Yvette Rameriz should be dismissed because Plaintiff forgot to list her as a party in the body of the complaint. The Court addresses each argument in turn.

#### A. Reverse Race Discrimination

Plaintiff brings claims for reverse race discrimination under § 1981 as well as the Equal Protection Clause (pursuant to § 1983). The Seventh Circuit has stated that "[w]hen the plaintiff alleges intentional discrimination, as here, it is clear that the same standards in general govern liability under sections 1981, 1983, and Title VII." *Friedel v. City of Madison*, 832 F.2d 965, 971 (7th Cir. 1987); see also *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 403–04 (7th Cir. 2007), *aff'd,* 553 U.S. 442 (2008).[2] Thus, if Plaintiff has pled facts establishing the racial animus necessary to state a viable § 1981 claim against Defendants, his § 1983 likely survives as well.

---

[2] One key difference between § 1981 and Title VII is that the latter authorizes suit only against the employer as an entity rather than against individual people who are agents of the employer. Under § 1981, individuals may be liable. Compare *Williams v. Banning,* 72 F.3d 552, 555 (7th Cir. 1995) (holding that supervisor may not held liable in his individual capacity for discrimination under Title VII), with *Patterson v. County of Oneida,* 375 F.3d 206, 226 (2d Cir. 2004) ("individuals may be held liable under §§ 1981 and 1983 for certain types of discriminatory acts"). Other important differences are that claims under § 1981 have a relatively long four-year statute of limitations, see *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 382 (2004); *Dandy v. United Parcel Service, Inc.,* 388 F.3d 263, 269 (7th Cir. 2004), are not subject to the damage caps enacted in the Civil Rights Act of 1991, see 42 U.S.C. § 1981a(b)(4), and do not require exhaustion of administrative remedies. See, e.g., *Fane v. Locke Reynolds, LLP,* 480 F.3d 534, 539 (7th Cir. 2007).

In Count I, Plaintiff alleges that Defendants discriminated against him on the basis of his race in the terms and conditions of his employment and thus violated 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991. The legislative history of the Civil Rights Act of 1991 indicates that it was enacted in response to a number of decisions by the United States Supreme Court that were perceived to sharply cut back on the scope and effectiveness of federal civil rights laws. See H.R.Rep. No. 102–40(I), at 18, *reprinted* in 1991 U.S.C.C.A.N. 549, 556. The Act overruled the Supreme Court's decision in *Patterson v. McLean Credit Union,* 491 U.S. 164 (1989), in which the Court held that § 1981 did not apply to conduct after a contractual relationship had been established. 491 U.S. at 171. Section 12 of the Act amended § 1981 to reaffirm that the right "to make and enforce contracts" includes the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship. See H.R. Rep. 102–40(II), at 37, *reprinted in* 1991 U.S.C.C.A.N. 549, 730–31. Specifically, Congress added subsection (b) to § 1981: "For the purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." H.R. Rep. 102–40(II), at 37, *reprinted in* 1991 U.S.C.C.A.N. 549, 730–31; see also *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 383 (2004) ("The 1991 Act overturned *Patterson* by defining the key 'make and enforce contracts' language in § 1981 to include the 'termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'"); *Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012).

To state a claim under § 1981, a plaintiff must allege that "(1) he is a member of a racial minority; (2) the defendant had the intent to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract." *Pourghoraishi v. Flying J.,*

6

*Inc.*, 449 F.3d 751, 756 (7th Cir. 2006) (citing *Morris v. Office Max, Inc.,* 89 F.3d 411, 413 (7th Cir. 1996)). In setting forth the prima facie case in reverse discrimination suits—i.e., cases brought by a white plaintiff—the Seventh Circuit has required a white plaintiff to "show background circumstances sufficient to demonstrate that the particular employer has reason or inclination to discriminate invidiously against whites or evidence that there is something 'fishy' about the facts at hand." *Hague v. Thompson Distribution Co.*, 436 F.3d 816, 820-21 (7th Cir. 2006) (internal quotations omitted) (citing *Ineichen v. Ameritech,* 410 F.3d 956, 959 (7th Cir. 2005); *Mills v. Health Care Serv. Corp.,* 171 F.3d 450, 457 (7th Cir. 1999); *Ballance v. City of Springfield,* 424 F.3d 614, 617 (7th Cir. 2005)).

Defendants argue that Plaintiff's race discrimination claims fail because he failed to allege that they "had a reason or inclination to discriminate invidiously against Whites." Motion to Dismiss at 5. In response, Plaintiff contends that he has sufficiently alleged discrimination through "evidence that there is something fishy about the facts at hand." *Jacobeit v. Rich Township High School Dist. 227*, 673 F. Supp. 2d 653, 660 (N.D. Ill. 2009).

Accepting Plaintiff's allegations as true, as the Court must at this stage of the case, on December 1, 2010, Plaintiff met with Watson, who told Plaintiff that he had been hired. On December 14, 2010, Defendant Frasier told Plaintiff that District 88 had rescinded his job offer and that the District was not hiring for any positions at that time. Rather than provide an explicit reason for the rescission, Frasier remarked, "I don't know what to tell you, but maybe God is telling you this is not the place God wants you to be." Frasier represented to Plaintiff that if he turned in his expenses, she would see to it that his costs were reimbursed. She also told him that he would receive a letter stating that he was not given the position and, if the District's hiring freeze ended, the District would contact him. Plaintiff alleges that the District in fact hired

7

several new employees in the following year, and specifically hired for the maintenance/custodian position. The District did not call Plaintiff when it started hiring for open positions. Furthermore, according to the complaint, the employee hired for the maintenance position in place of Plaintiff was African-American. Plaintiff was neither reimbursed for his expenses nor provided with a letter stating the reasons for the rescission of his offer of employment.

All of these facts, taken together, suggest that something "fishy" was afoot. Drawing all reasonable inferences in favor of Plaintiff, as the Court must do at this stage, the District offered a position to a white applicant and then rescinded the job, later hired an African-American for the position, made more than one false statement about the circumstances surrounding the rescission, and failed to reimburse Plaintiff or give him a reason as to why his offer was rescinded. Plaintiff has pled facts sufficient to state a viable § 1981 claim against Defendants for reverse race discrimination. Because Defendants' arguments in support of dismissing Plaintiff's § 1983 claim are the same as those made with respect to dismissal of the § 1981 claim, dismissal of the § 1983 claim is not appropriate at this time either.

Moreover, Plaintiff has properly alleged municipal liability because he brings his claim not only against Gwen Frasier (District 88's HR director), but also against the elected members of District 88's school board, whom he alleges made employment decisions for District 88. Specifically, the complaint alleges that the school board members for District 88 are responsible for selecting and hiring certain employees, including for the maintenance/custodian position at issue. From these facts, it is reasonable to infer that the school board members had the final policymaking authority as to who was hired by the District, including the position for which Plaintiff applied. Rather than addressing Plaintiff's theory of municipal liability—expressly set

8

forth in Plaintiff's response brief—Defendants' arguments center on what a plaintiff must do to establish that the employment decision was in furtherance of an official policy or custom. But Plaintiff is not alleging municipal liability pursuant to an official policy or custom theory; rather, he alleges municipal liability on the basis of decisions made by an individual (or individuals) with final policymaking authority. Therefore, the majority of Defendants' arguments are inapposite.[3]

### B. Punitive Damages

Plaintiff will only be allowed to seek punitive damages that are permitted by law. Plaintiff has clarified in his response brief that he does not seek punitive damages against the District and the individual Defendant in their official capacities. This is sufficient to apprise both Defendants and the Court as to the claims asserted, and an amendment to the complaint is not necessary.

### C. Yvette Ramirez

Defendants contend that Yvette Ramirez should be dismissed as a Defendant because she is merely listed in the caption and in the complaint's preamble, but is not listed in the section entitled "The Parties." Plaintiff appears to have listed Defendant Marilyn Thurman twice and to

---

[3] In their reply brief, Defendants' remark: "Interestingly, Plaintiff states on page 9 of his responsive brief that he is not, in fact, asserting any claim pursuant to *Monell*." See Motion to Dismiss at 6, n.1. This comment and the additional arguments made by Defendants with respect to *Monell* liability indicate a fundamental misunderstanding about *Monell* liability. As pointed out by Plaintiff in his response brief, it is well-established that a plaintiff may state a *Monell* claim in one of three ways: by alleging that (1) the defendant had an express policy that caused a constitutional deprivation when enforced; (2) the defendant had a widespread practice that was so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) the constitutional injury was caused by an official who had "final policymaking authority." *McCormick v. City of Chicago,* 230 F.3d 319, 323–24 (7th Cir. 2000). Plaintiff never states on page 9 of his response that he is not asserting a *Monell* claim; rather, after laying out the three ways in which municipal liability can be found, Plaintiff advises the Court and Defendants that he is pursuing a *Monell* claim via the third avenue.

have failed to list Yvette Ramirez as a party. However, Plaintiff's response brief makes clear that the allegations against Yvette Ramirez are that she, like Defendants Thurman, Walker, Lanier, Smith, Miller, and Castrejone, served on the District 88 School Board as an elected member and, in that capacity, was responsible for selecting and hiring certain employees for District 88, including for the maintenance/custodian position. These allegations are consistent with those in the complaint and are sufficient, at this stage, to state a claim against Ms. Ramirez. See *Help At Home, Inc. v. Med. Capital, LLC*, 260 F.3d 748, 753 (7th Cir. 2001) (holding that courts may consider additional facts in a plaintiff's response to a motion to dismiss if "the facts are consistent with the allegations of the complaint."); see also *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1037 (7th Cir. 2012).

### IV. Conclusion

For the reasons set forth above, the Court denies Defendants' motion to dismiss or strike Plaintiff's complaint [8].

Dated: July 25, 2013

Robert M. Dow, Jr.
United States District Judge